UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Kevin Rogers

    v.                                                        Civil No. 19-cv-118-JL
                                                               Opinion No. 2021 DNH 127P

Town of New Hampton, et al.

**MEMORANDUM ORDER**

This order provides rulings on the defendant's pretrial evidentiary motions in limine. Following numerous dispositive motions, which eliminated several claims against several other defendants, only pro se Plaintiff Kevin Rogers' claim under 42 U.S.C. § 1983 against Defendant Sergeant Michael Grier for deliberately indifferent failure to provide medical care during police custody will proceed to trial. Ahead of the jury trial, Sergeant Grier filed three motions in limine to exclude a variety of evidence and areas of inquiry. The court addresses each motion in turn.

These rulings are made without prejudice to revisiting particular issues in response to circumstances that might arise during trial. Furthermore, these rulings are limited to grounds argued in the parties' filings and raised at oral argument. The court reserves the right to assess other factors at trial, such as hearsay, authenticity, and best evidence, see Fed. R. Evid. 800 et seq., 900 et seq., and 1000 et seq., and where appropriate, arguments and grounds not raised by each side. To the extent the court here rules that evidence may be admitted for a limited purpose, see Fed. R. Evid. 105, it will give the jury a limiting instruction upon the request of counsel at trial.

## I.    Background

In early 2016, Rogers was charged in New Hampshire state court with 12 counts of violating N.H. Rev. Stat. Ann § 173-B:9 for sending emails to his wife in violation of a court order limiting their contact during their divorce proceedings. Town of New Hampton officials

prepared and approved an arrest warrant for Rogers, and Officer Christopher Heney of the New Hampton Police Department informed Rogers about the warrant. Rogers denied committing any crime but agreed to come to the police station. Rogers' deliberate indifference claim against Sergeant Grier arises from events that occurred after Rogers arrived at the station.[1]

When Rogers arrived at the station, he was taken to the booking room. Rogers claims that he was handcuffed to a bench. Rogers then saw Sergeant Grier, who, according to Rogers, taunted Rogers and informed him that he would not be released and would be going to jail. Rogers claims that this caused immediate chest pains and difficulty breathing. He contends that he gripped his chest, told the officers that he was having difficulty breathing, and fell off the bench. Rogers then told the officers that no protective order was in effect against him and asked for emergency medical services (EMS) or for access to the portable oxygen concentrator that was in his vehicle. Rogers next alleges that Sergeant Grier "mirandized" and questioned him. Rogers contends that, at this point, he could barely speak and was experiencing headaches, vision loss, involuntary urination, and color change due to cyanosis. Rogers claims that Officer Heney suggested calling EMS, but Sergeant Grier laughed and said he believed Rogers was faking distress.

Sergeant Grier and Officer Heney offer a different account of these events. Officer Heney denies handcuffing Rogers to the bench, and claims that he, and not Sergeant Grier, informed Rogers after booking that Rogers would be held overnight for arraignment, at which point Rogers began to argue. They assert that Rogers continued to complain about the charges and stated that he was having difficulty breathing. Officer Heney and Sergeant Grier deny that

---

[1] The parties recall the events in question differently. For context, the court will provide a summary of each party's recollection in this order.

Rogers complained of chest pain or fell off the bench. Both refute that Sergeant Grier taunted or laughed at Rogers, and they deny that Rogers showed any indications of actual medical distress. They also deny that Rogers requested EMS or oxygen, and they deny discussing calling EMS. Officer Heney handcuffed Rogers, escorted him to the rear seat of a police vehicle, and transported him to the Belknap County House of Corrections. House of Corrections staff completed a medical screening form for Rogers, which reported that Rogers displayed no obvious pain or injury upon admission.

Rogers contends that there was a video recording of the booking area of the New Hampton Police Department Headquarters that captured his booking and arrest in February 2016. In May 2016, Rogers contacted the New Hampton Chief of Police by email, stating that he intended to sue the department, would subpoena the video from the night of his arrest, and requesting that the department preserve all videos and other evidence relating to his arrest. The video recording of Rogers' arrest, however, appears to have been deleted because the recording system used by the New Hampton Police Department was set on a loop, such that recordings were only preserved for 7-10 days. Because Rogers did not request a copy of the recording within this 7-10 day window, the recording was likely recorded over in the normal course.

The defense moves to exclude three pieces of evidence: (1) a statement allegedly made by Officer Heney in which he told Sergeant Grier that they should call for Emergency Medical Services[2]; (2) Rogers' medical records and bills[3]; and (3) references or arguments about the

---

[2] See Defendant's Motion in Limine (doc. no. 71).

[3] See Defendant's Motion in Limine (doc. no. 72).

3

videotape of his police booking, which was recorded over, as well as any adverse inference instructions regarding the video at trial.[4]

## II. Analysis

### A. Hearsay statement attributed to Officer Heney

First, the defense seeks to exclude the introduction of a purported hearsay statement attributed to Officer Heney. Rogers alleges that he overheard Officer Heney tell Sergeant Grier that they should call an EMS.[5] Officer Heney has denied making this statement.[6] The defense argues that Rogers should not be allowed to testify about Officer Heney's alleged statement because it is inadmissible hearsay under Fed. R. Evid. 801, 802. Rogers argues that the alleged statement is admissible under the "excited utterance" hearsay exception. See Fed. R. Evid. 803(2) (defining a statement "relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused" to be an excited utterance and an exception to the rule against hearsay). In Rogers' surreply, he further argues that the statement was a present sense impression and thus exempted from the rule against hearsay. See Fed. R. Evid. 803(1) ("A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it" is a present sense impression and an exception to the rule against hearsay).

Hearsay is an out-of-court statement by a declarant that is offered "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801. Hearsay is generally inadmissible. See

---

[4] See Defendant's Motion in Limine (doc. no. 73).

[5] See Affidavit of Kevin Rogers (doc. no. 46-2) ¶ 17.

[6] See Affidavit of Christopher Heney (doc. no. 47-2) ¶¶ 14-15.

4

Fed. R. Evid. 802.  Rogers "recalls Officer Heney indicating to Defendant Grier that EMS should be called, and Defendant Grier indicating 'He's faking – he was fine just a minute ago.'"[7]  This statement is inadmissible hearsay to prove its truth – that the police should have called for medical assistance.  See Fed. R. Evid. 801(c)(2).  It is not hearsay, however, for the purpose of establishing that Sergeant Grier heard and was thus aware of Officer Heney's alleged comment that suggested they should call for EMS.  In this respect, the statement is admissible because it will not be offered for its truth to prove that EMS should have been called, but rather that Sergeant Grier was aware of Officer Heney's statement to that effect.  See Fed. R. Evid. 801(c)(2).  Where admissible nonhearsay is concerned, hearsay exceptions like the excited utterance exception and the present sense impression exception do not apply.[8]

      Furthermore, Officer Heney's alleged statement is relevant under Fed. R. Evid. 401 because it could potentially assist the jury in determining whether Sergeant Grier was aware of Rogers' condition or distress.  For Rogers to prevail at trial on his deliberate indifference claim, he must establish that Sergeant Grier was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Officer Heney's alleged statement is relevant since it has a "tendency to make" the fact that Sergeant Grier was aware of a substantial risk of serious harm to Rogers "more or less probable than it would be without the evidence" and thus, "is of consequence in determining the action."  Fed. R. Evid. 401; see also Fed. R. Evid. 402 (general admissibility of relevant evidence).

---

[7] Doc. no. 46-2, at ¶ 17.

[8] It is possible, depending on how the evidence is elicited at trial, that the statement might be an excited utterance.  See Fed. R. Evid. 803(2).  If that occurs, the court may revisit whether the statement is admissible for its truth.

As a condition to admissibility, however, Rogers must first show that Sergeant Grier was present in the booking room with Officer Heney because the alleged statement is only relevant to establishing Sergeant Grier's awareness if Sergeant Grier was present to hear the statement. See Fed. R. Evid. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist.  The court may admit the proposed evidence on the condition that the proof be introduced later.").  Sergeant Grier's alleged response to Officer Grier, that Rogers was faking it, suggests that this was the case.[9]  For his part, Sergeant Grier denies any such conversation took place.  Either way, the trial evidence will bear this point out.

For these reasons, Sergeant Grier's motion is granted in part and denied in part.  If requested, the court will issue a limiting instruction so that the statement may not be considered for its truth in establishing that EMS should have been called, but confined to Sergeant Grier hearing a statement by Officer Heney that they should call EMS.  See Fed. R. Evid. 105.

### B.  Medical records and bills

The defense next moves to preclude the introduction of medical records and bills that Rogers claims reflect medical care necessitated by Sergeant Grier's conduct.  Specifically, Rogers seeks to introduce blood work records allegedly showing that "a serious change occurred with the levels of various indictors of health" and claims that these records "clearly indicated that the Plaintiff had a seriously detrimental change in his health, from the actions from the Defendants."[10]  Sergeant Grier argues that these records should be excluded from the trial because such evidence would necessarily entail the jury making an impermissible inference of

---

[9] See Doc. no. 46-2, at ¶ 17.

[10] See Rogers' Objection to Motion in Limine (doc. no. 78) ¶12.

6

causation, without the benefit of expert testimony, which is beyond the common experience of jurors. As explained below, the court mostly agrees with the defense.

The medical records and bills cannot be used as Rogers intends since Rogers has not timely disclosed an expert witness and will not present expert opinion testimony at trial to causally connect his post-arrest medical condition and need for medical care to Sergeant Grier's alleged conduct. Due to the complexity of Rogers' alleged medical condition and the specialized knowledge required to understand laboratory results, blood work, and other medical records, drawing a causal connection between Sergeant Grier's conduct and these records is beyond the ken of an average juror. See, e.g., Brown v. Englander, No. 10-CV-257-SM, 2012 WL 1986518, at *3 (D.N.H. June 1, 2012) (McAuliffe, J.) (summary judgment was appropriate on deliberate indifference claim because plaintiff could not show that the surgery he requested was medically necessary since "[o]nly a medical expert can testify on such matters"); Pearson v. Prison Health Service, 850 F.3d 526, 536 (3rd Cir. 2017) ("[M]edical expert testimony may be necessary to establish deliberate indifference in an adequacy of care claim, where, as laymen, the jury would not be in a position to determine that the particular treatment or diagnosis fell below a professional standard of care."); Alberson v. Norris, 458 F.3d 762, 765–66 (8th Cir. 2006) ("Where the complaint involves treatment of a prisoner's sophisticated medical condition, expert testimony is required to show proof of causation.").

Without an expert witness, the medical records and bills are not relevant to Rogers' damages because the records and bills by themselves do not have "any tendency to make" the "fact more or less probable" that Sergeant Grier's conduct caused Rogers' injuries. Fed. R. Evid. 401. Similarly, Rogers cannot testify as to the causal connection between his post-arrest medical condition and Sergeant Grier's conduct because a lay witness may not testify as to "scientific,

technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701; see also Fed. R. Evid. 702 (testimony by expert witnesses). Because the medical records and bills are irrelevant to the causation question without accompanying expert testimony, they are inadmissible for that purpose. See Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

The court will permit Rogers to introduce a very limited number of appropriately redacted, and properly authenticated, medical records to corroborate his (presumed) testimony that he received medical care after the events giving rise to this litigation or for other issues not requiring expert testimony. See Scinto v. Stansberry, 841 F.3d 219, 230 (4th Cir. 2016) ("There is no requirement, however, that a plaintiff alleging deliberate indifference present expert testimony to support his allegations of serious [medical need]"). If Rogers introduces medical records and bills for these purposes, the court will issue a limiting instruction upon request by defense counsel. See Fed. R. Evid. 105. Sergeant Grier's motion to preclude the admission of Rogers' medical records and bills is therefore granted, subject to the exceptions discussed above.

### C. Booking video

Finally, Sergeant Grier moves to exclude testimony and arguments regarding the video recording of Rogers' experience in the booking area and its absence at trial. He also preemptively objects to any potential adverse inference instruction resulting from the purportedly "lost" video. For the following reasons, defendant's motion is granted in part and denied in part.

At the time that Rogers appeared at the New Hampton Police Department in February 2016, a video recording system recorded the booking area on a loop, however, recordings were only preserved for 7-10 days.[11] Rogers, via email, requested the video over three months later –

---

[11] See Huckins Affidavit (doc. no. 73-2) ¶6.

well after the video had been recorded over in the normal course.[12] The defense moves to exclude all references to the booking video under Fed. R. Evid. 403, arguing that discussion concerning the deleted video footage at trial would distract the jury from the main issues of the case and "risk tainting the Defendant with alleged (and unproven) misconduct of others over whom he has no control."[13] Rogers argues that he is entitled to an adverse inference instruction as a spoliation sanction because his criminal defense attorney sent a broad discovery request to the New Hampton Police Department eight days after the incident (within the timeframe when the video may still have existed), which should have put the department on notice of his request to preserve the booking video.[14] Sergeant Grier responds that the discovery request did not encompass the booking video, and even if it did, the video was not responsive to the request because it was not related to the pending criminal charges.

No one disputes that the subject video would constitute relevant evidence as it presumably depicted the events giving rise to Rogers' deliberate indifference claim. See Fed. R. Evid. 401, 402. Under Fed. R. Evid. 403, however, the court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Sergeant Grier will be minimally prejudiced, if at all, from the jury hearing that a recording once existed, that it was requested more than three months after the incident, but that it was overwritten under a routine (at the time) process. And the absence of the video and the clarity of Rogers' request by his criminal defense attorney

---

[12] See Doc. no. 73-2, at ¶7.

[13] See Doc. no. 73, at 5.

[14] See Doc. no. 79, at ¶1.

9

impact the weight of the evidence regarding its absence, rather than its admissibility. Moreover, Sergeant Grier will not be unfairly prejudiced by discussions of the booking video (or its absence) because his witnesses will be able to explain why the recordings no longer exist, which has little to do with Sergeant Grier and does not obviously appear to be the result of any attempt to conceal evidence.

The court will therefore not preclude evidence about the booking video or its absence at this time. If requested, the court will issue a limiting instruction to the jury that the evidence may be considered only on the issues of whether the video existed, whether and when it was requested by Rogers, the circumstances surrounding its unavailability, and any rational inferences the jury may draw from these facts. See Fed. R. Evid. 105. If either side argues any irrational or impermissible inferences from these facts, the court will address the situation accordingly.

The court also declines to provide an adverse inference instruction on this issue. Under Fed. R. Civ. P. 37(e), the court may provide an adverse inference instruction for a party's failure to preserve electronically stored information when information "that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Before issuing an adverse inference instruction, the court must first find "that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e). Because neither Sergeant Grier nor the New Hampton Police Department intentionally deprived Rogers of the booking video, such an instruction is not warranted here.

### III.     Conclusion

Consistent with the reasons in this order, Sergeant Grier's motions in limine[15] are granted in part and denied in part.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:   August 12, 2021

cc:       Kevin Rogers, pro se
          Brian J. S. Cullen, Esq.
          Jonathan M. Shirley, Esq.

---

[15] See Doc. nos. 71, 72, 73.